Patricia THOMAS, Plaintiff-Appellant,

v.

THOMPSON SCHOOL DISTRICT R2–J, Defendant-Appellee.

No. 85CA0395.

Colorado Court of Appeals, Div. II.

June 18, 1987.

Rehearing Denied July 30, 1987.

Certiorari Denied Feb. 16, 1988.

Hobbs/Bethke & Associates, William P. Bethke, Denver, for plaintiff-appellant.

Starr & Matsunaka, Randolph W. Starr, Loveland, for defendant-appellee.

SMITH, Judge.

Plaintiff, Patricia Thomas, appeals the dismissal by the trial court of her action seeking to compel defendant, Thompson School District R2-J, to participate in non-binding arbitration of her employment grievances. We affirm.

Thomas, then employed as a non-tenured school teacher in defendant school district, was advised on February 28, 1983, that her principal had recommended that she not be reemployed for the following school year. Shortly thereafter, Thomas tendered six grievances to the principal objecting to statements made in several of her employment evaluations and alleging various procedural deficiencies in the evaluation process.

Thomas' grievances were considered and denied at the principal and superintendent level, the second and third steps of the grievance procedure set forth in the "Memorandum of Understanding" that constituted the collective bargaining agreement (Agreement) between the Thompson Education Association (TEA) and the Thompson School District R2-J Board of Education (Board). Pursuant to the final step of the grievance procedure, Thomas requested that TEA submit her grievances to non-binding arbitration.

TEA agreed, evaluated the grievances, and, having decided that they were meritorious, made demand on the Board for non-binding arbitration under the Agreement. In the interim between the superintend-ent's rejection of the grievances (step three) and TEA's demand, the Board voted not to renew Thomas' annual nontenure contract under its statutory power to do so.

Thereafter, upon receiving TEA's request, the Board did not agree that the grievances were arbitrable and refused the request. The question concerning arbitrability was then submitted by TEA to an arbitrator who reviewed the matter and held that the grievances were subject to arbitration. The Board unanimously rejected this determination on October 17, 1983, and refused to participate in any arbitration. TEA thereupon apparently elected to pursue the matter no further.

Nearly a year later, on September 5, 1984, Thomas filed suit in district court seeking to compel the school district to submit to non-binding arbitration. Following a hearing the trial court denied Thomas' requested relief on the grounds that she lacked standing to bring the action, and, alternatively, that, by virtue of the doctrine of laches, she was precluded from obtaining any relief to which she might otherwise be entitled.

On the standing issue, the trial court held that Thomas was not a proper party to bring an action to compel arbitration because the Agreement was a contract between TEA and the district under which the right to require the district to engage in arbitration rested solely with TEA. We agree.

The Agreement, Article 7-2-4, establishes a "Step Four" procedure relative to grievances. It provides in pertinent part:

"If the aggrieved [employee] is not satisfied with the decision at step three ... the aggrieved may ... request the Association to submit the grievance to arbitration. If the Association deems the grievance meritorious, it may demand arbitration. If the Association decides not to take the grievance to arbitration it shall so advise the aggrieved and the superintendent, and the decision reached at step three will be final."

Thus, the issue here is not whether arbitration was proper. Furthermore, it is not whether the employee can compel the Association to pursue the right to arbitration,

nor is it even whether the Association can compel arbitration by judicial sanction, if necessary. Rather, the sole question is whether Thomas, under the contract, may independently seek a court order compelling the district to participate in arbitration concerning her grievances. We hold that she may not.

Even though the plain language of Article 7 of the Agreement demonstrates that the parties, the Association and the district, did not contemplate conferring such right on Thomas, she, nevertheless, argues that she is a third-party beneficiary of the contract and is thus entitled to compel such arbitration.

■ A person who is not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is direct and not merely incidental. *See E.B. Roberts Construction Co. v. Concrete Contractors, Inc.,* 704 P.2d 859 (Colo.1985); *Borwick v. Bober,* 34 Colo.App. 423, 529 P.2d 1351. Here, however, the issue is whether this common law rule applies to arbitration under a collective bargaining agreement.

That issue is one of first impression in Colorado, but other jurisdictions have previously addressed and rejected its applicability under such circumstances.

Several jurisdictions have ruled that the collective bargaining contract contemplates only the union and the employer as parties for purposes of arbitration and thereby precludes a demand for arbitration by an individual. *Procter & Gamble Independent Union of Port Ivory v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181 (2d Cir.1962); *U.S. v. Voges,* 124 F.Supp. 543 (E.D.N.Y.1954); *Local Union No. 12405 v. Martin Marietta Corp.,* 328 F.2d 945 (7th Cir.1964).

The rationale of this rule was stated by the Court of Appeals in *Black Clawson Co. v. International Ass'n of Machinists,* 313 F.2d 179 (2d Cir.1962):

"Chaos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer by process-ing grievances through the various steps of the grievance procedure and ultimately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union."

In *White v. General Baking Co.,* 263 F.Supp. 264 (D.N.J.1964), individual standing to compel arbitration was denied under a contract provision which provided, *inter alia,* that: "Any disagreement or dispute between the parties in any manner connected with the Agreement, which cannot be adjusted directly between the parties, shall be referred to arbitration." The *White* court did so on the basis that such denial would "promote the interests of efficiency, stability and uniformity in union-management grievances and arbitration procedure, and will serve to strengthen the relationship between a union and an employer in the collective bargaining process." *See* Cox, *Rights Under a Labor Agreement,* 69 Harv.L.Rev. 601 at 625–626 (1956).

■ The rule enunciated by these cases, while not universal, is by far the majority rule in the United States, and we are convinced that it is a well-reasoned one, proceeding as it does from the proposition that when employees select a union to represent them, they relinquish certain rights which they might otherwise have had, in order to gain the benefits of collective representation.

We adopt that rule here, and we conclude that Thomas had no standing independently to seek a judicial order compelling the District to arbitrate. That right resided solely in the Association. The trial court's ruling which, in essence, dismissed her complaint for lack of standing was therefore correct.

Having disposed of this case on the standing issue, we do not address the other issues raised by plaintiff.

Judgment affirmed.

VAN CISE and STERNBERG, JJ., concur.