**JEFFERSON COUNTY SCHOOL DISTRICT NO. R–1,**
**Petitioner,**

**v.**

**Denise SHOREY, an individual, and Jefferson County Education Association, Respondents.**

**No. 90SC664.**

Supreme Court of Colorado,
En Banc.

March 10, 1992.

Caplan and Earnest, Gerald A. Caplan, Allen P. Taggart, Jeannette Walker Kornreich, Boulder, for petitioner.

Martha R. Houser, Gregory J. Lawler, Aurora, for respondents.

Justice QUINN delivered the Opinion of the Court.

This case requires us to determine the nature and extent of the grievance rights of an employee association which functions also as a labor union for public school teachers, and the rights of one of its teacher members, under a collective-bargaining agreement between the employee association and the employer school district. In *Shorey v. Jefferson County Sch. Dist. No. R–1,* 807 P.2d 1181 (Colo.App.1990), the court of appeals held as follows: that the employee's grievance was not outside the scope of the provisions of the collective-bargaining agreement relating to arbitration; that the employee association was not equitably estopped from compelling non-binding arbitration of a grievance on behalf of one of its members who had been selected but later was rejected for a position, even though the association had previously processed a grievance on behalf of another member who, as a result of the grievance, was selected for the same position; and that the non-binding arbitration clause of the collective-bargaining agreement could not be construed to deny the employee her right to sue the school district for breach of contract. We granted certiorari to review the decision of the court of appeals, and we now affirm the judgment.

## I.

### A.

On January 1, 1986, the Jefferson County School District No. R–1 (school district) and the Jefferson County Educational Association (association) entered into a Negotiated Agreement (agreement) which was to be effective for a two-year period ending on December 31, 1988. The preamble to the agreement states that it is intended to foster cooperation between the school district and the teachers by encouraging good-faith negotiations and a fair and open exchange of views between the parties. Article 3–1 of the Agreement provides that the association is the exclusive representative of all teachers in the school district. Teachers are defined as "full-time, nonadministrative personnel and part-time teach-

ers ... certified by the Colorado State Department of Education." Agreement, § 1–1. Although the agreement encompasses a wide range of topics ranging from teacher work hours to academic freedom and professional behavior, the central feature of the agreement is the procedure for resolving employee grievances.

A grievance is defined in section 7–1–1 as "a dispute, disagreement or controversy concerning the interpretation or application of this Agreement or related matter." Section 7–2–1 requires a grievant to attempt initially to resolve a grievance informally by personally discussing the matter with the grievant's immediate supervisor. If the grievant and the immediate supervisor cannot resolve the grievance informally, the grievant can resort to a process involving three separate levels. Section 7–3–1 states:

> No grievance shall be recognized by the District or the Association unless it shall have been presented at the appropriate level within thirty (30) school days after the aggrieved person knew, or should have known, of the act or condition on which the grievance is based, and if not so presented, the grievance will be considered as waived, except by mutual agreement of the Association and the office of Employee Relations.

Level-one of the grievance process is initiated when an association representative signs a written grievance and then transmits it to the school district's office of employee relations, to the grievant's immediate supervisor, and to the association. Agreement, section 7–4–1–1. The level-one phase of the grievance process consists of a meeting between the grievant and the immediate supervisor. *Id.* The meeting must be held within five school days after the written grievance is received by the grievant's supervisor, the office of employee relations, and the association. *Id.*

Level-two of the grievance process is initiated by the association's filing of a grievance with the school district's office of employee relations. Section 7–4–2–1 of the agreement states that the association

"shall file a grievance directly" with that office in the following situations:

A. The grievance affects more than one (1) teacher at more than one (1) school; or

B. The grievance was previously filed at Level One but was not resolved to the satisfaction of the grievant or the Association; or

C. No decision was rendered within five (5) school days of the Level One meeting; or

D. The grievance affects the Association's representative status.

The area superintendent serves as the umpire at a level-two hearing, which must be held within ten school days after receipt of the request for the hearing. Agreement, § 7–4–2–3. The umpire must provide the school district and the association with a written decision and the reasons for the decision within ten days after the hearing. *Id.*[1]

If the association or the grievant is dissatisfied with the level-two disposition, "the Association may, if it deems the grievance meritorious, request a [level-three] hearing before an umpire." Agreement, § 7–4–3–1. The requirement that the association evaluate the merits of a grievance applies only when the grievance has already been determined at a level-two hearing. *Id.* The level-three process begins when the association files a written request after receipt of the level-two decision. The umpire for the level-three hearing is to be selected from a mutually acceptable list of not less than three nor more than five umpires. Agreement, § 7–4–3–2. Within thirty days from the conclusion of the hearing, the umpire is required to submit a report to the school district and the association. Agreement, § 7–4–3–5. The report must contain "findings of fact, reasoning, conclusions and recommendations, which shall be consistent with law and with the terms of [the] Agree-

ment." *Id.* The umpire's report, however, is advisory only, and the "final determination of the issues raised by the grievant shall be made by the [school district]." Agreement, § 7–4–3–10.

**B.**

The above provisions of the collective-bargaining agreement were in effect in 1987, when Denise Shorey began her tenth year of employment with the Jefferson County School District as a library media specialist at Mandalay Junior High School. In October 1987 Shorey applied for a vacant library media specialist position at Standley Lake High School. The principal of the high school selected Shorey for the position, and Shorey received a letter dated November 5, 1987, advising her of her transfer to that position effective on February 16, 1988.

Martha Krenek, who was a teacher at Bell Junior High School in the school district and had been employed by the district for seventeen years, also applied for the same position. When she was not chosen for the position, she requested the association to file a level-one grievance because, in her view, she was as qualified as Shorey and had more seniority. Krenek's grievance was filed with the employee relations office of the school district on November 13, 1987, and was signed by an association representative. Krenek's grievance alleged that the school district, by choosing Shorey for the position, had violated section 34–4–3 of the agreement, which sets forth the following criteria for the selection of a teacher for a voluntary transfer:

A. Individual teacher qualifications.

B. Individual requirements of the open position, as specified in the job requisition.

---

1. Section 7–4–2–4 of the agreement provides that the school district and the association may mutually agree to submit the grievance to mediation after a level-two decision has been rendered. The mediator is to be selected from a list of five mediators, skilled in mediation of educational matters, submitted by the American Arbitration Association. Section 7–4–2–4 states that if the mediation is successful, both parties agree to implement the settlement. If no settlement is reached through mediation, the grievant may request a level-three hearing. *Id.* Nothing in the agreement, however, indicates that either the school district or the association must mediate the level-two decision before requesting a level-three hearing.

C. Experience in the teaching field for which application is being made.

D. Proportionate distribution within a given faculty of experienced and inexperienced teachers.

E. When the foregoing are substantially equal, preference in assignment or transfer shall be given to the incumbent applicant with the greatest length of service in the District.

The principal of Standley Lake High School, acting in the capacity of Krenek's immediate supervisor for purposes of the grievance process, did not meet with Krenek on her grievance, but, instead, reviewed Krenek's and Shorey's qualifications as reflected in their personnel files. There is no indication in the record that an association representative participated in, or had the opportunity for any input into, the principal's level-one review. The principal determined that both Krenek and Shorey were equally qualified for the position, but decided to replace Shorey with Krenek because Krenek had the greater length of service with the district. Shorey was accordingly notified by letter that her assignment to the Standley Lake position was in error and that Krenek had been selected for the position.

Shorey thereafter filed a grievance with the office of employee relations on November 30, 1987. Shorey's grievance, which was signed by an association representative, alleged that, pursuant to the selection criteria of section 34–4–3 of the agreement, Shorey was the better qualified candidate. Shorey requested reinstatement to the position or readvertisement of the position under the same job description. A level-one meeting with Shorey was held by the Standley Lake High School principal, acting as Shorey's immediate supervisor. Again, the record does not show that an association representative participated in any manner in the level-one hearing. The principal denied Shorey's grievance, stating only that "[a]fter reviewing the data presented to me, I have decided to deny this grievance."

The association requested a level-two hearing on behalf of Shorey. The superintendent for the north area of the school district served as the umpire at the level-two hearing. The umpire issued a written decision in which he found that both Shorey and Krenek had excellent evaluations, but concluded that it was impossible to determine whether Shorey's qualifications placed her "head and shoulders" above Krenek's qualifications. The umpire's reference to the "head and shoulders" standard referred to the arbitration history of the agreement, which allowed the district to choose an applicant with less seniority over a more senior candidate only if the junior applicant's qualifications were substantially greater than those of the senior candidate. The umpire accordingly denied Shorey's grievance.

After receiving the umpire's level-two decision, the association, pursuant to section 7–4–3–1 of the agreement, evaluated Shorey's grievance and concluded that the grievance had merit. The association accordingly requested level-three arbitration on behalf of Shorey. In a letter to the association's executive director, the school district denied the request for arbitration, stating that the association's refusal to support one applicant over the other had "dissolved any issues of equity or contract interpretation" and had reduced the issue into "nothing more than a political problem." The school district also remarked in its letter that arbitration would not resolve the issue because, in its view, arbitrators refuse to second-guess management's judgment on an applicant's qualifications. Finally, the district maintained that no further action was required because the association's filing of the Krenek grievance on her behalf resolved all issues concerning the Standley Lake High School position.

The association and Shorey then sued the school district and requested alternative relief in the form of money damages for breach of contract, a mandatory injunction requiring the school district to award Shorey the Standley Lake High School position, and an order requiring the school district to engage in level-three arbitration pursuant to the agreement. The school district denied liability under the agree-

ment and raised various affirmative defenses, including estoppel, the association's settlement of the dispute pursuant to the agreement, and Shorey's lack of standing to sue the school district in her individual capacity. The school district also filed a motion for summary judgment.

After hearing argument on the school district's motion, the trial court granted the motion. It ruled that, although the agreement required the school district to engage in level-three arbitration, the association and Shorey, whose rights under the agreement were no greater than the association's rights, were estopped from compelling the district to arbitrate by virtue of the association's filing a grievance on behalf of Krenek.[2] The association and Shorey appealed to the court of appeals, which reversed the judgment and ordered the trial court to compel arbitration of Shorey's grievance in accordance with the procedures outlined in the agreement and to reinstate Shorey's breach of contract claim against the school district, but stayed any further proceedings on the contract claim pending the outcome of level-three arbitra-

tion. *Shorey*, 807 P.2d at 1184. The court of appeals, citing the Uniform Arbitration Act, §§ 13–22–201 to –223, 6A C.R.S. (1987),[3] held that the trial court was required to order arbitration, when, as here, the agreement contained an arbitration provision and the contested claim was within the scope of the arbitration provision. In addition, the court of appeals was of the view that the record did not support the trial court's determination that the association was estopped from compelling arbitration on behalf of Shorey, since the association merely forwarded Shorey's complaint to the school district and neither the association nor Shorey did anything to induce the school district to settle the Krenek grievance without a hearing. Finally, the court of appeals concluded that the agreement's advisory arbitration provision could not be construed as the exclusive remedy for a grievant and that, consequently, Shorey should be permitted to pursue her claim against the school district for breach of contract.[4] The court of appeals accordingly directed the trial court to reinstate Shorey's claim for breach of contract but to

2. The trial court also concluded that the association and Shorey were collaterally estopped from pursuing Shorey's grievance by virtue of the resolution of the Krenek grievance in favor of Krenek. The court of appeals held otherwise. Although we did not grant certiorari on that issue, we agree with the court of appeals that the requirements for collateral estoppel were not established. *See Pomeroy v. Waitkus*, 183 Colo. 344, 350–51, 517 P.2d 396, 399 (1974).

3. Section 13–22–204, 6A C.R.S. (1987) states, in pertinent part, as follows:
   (1) On application of a party showing an agreement described in section 13–22–203 and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but, if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.
   \*    \*    \*    \*    \*    \*
   (5) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.
   Section 13–22–203, 6A C.R.S. (1987) states:
   A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any

controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This part 2 also applies to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement.

4. The court of appeals held that "the plaintiffs" (i.e., both the association and Shorey), were not estopped from compelling arbitration on her grievance. *Shorey*, 807 P.2d at 1184. Although our grant of certiorari did not include whether Shorey could compel arbitration, we note here that the court of appeals, to the extent it allows Shorey to compel arbitration, overlooked *Thomas v. Thompson School Dist. R2–J*, 749 P.2d 966 (Colo.App.1987), a prior court of appeals decision which held that only the union can compel arbitration under the collective bargaining agreement. We agree with the "union-only rule" and disapprove any implication in the court of appeals' opinion that Shorey could compel arbitration. *See, e.g., Black Clausen Co. v. International Ass'n of Machinists*, 313 F.2d 179 (2d Cir.1962); *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.*, 312 F.2d 181, 185 (2d Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).

stay any proceedings thereon pending completion of level-three arbitration of Shorey's grievance.

We granted the school district's petition for certiorari to consider the following issues: whether Shorey's grievance alleging that she was entitled to be selected for the Standley Lake High School position was beyond the scope of level-three advisory arbitration; whether the association should have been equitably estopped from processing a grievance on behalf of Shorey when the association also had processed a successful grievance on behalf of Krenek; and whether Shorey has an independent right, as a third party beneficiary, to sue the school district for breach of the collective-bargaining agreement.

## II.

Because the issues before us implicate to a considerable extent the responsibilities of a labor union to an employee under a collective-bargaining agreement, we begin with an overview of federal labor-law jurisprudence with respect to those responsibilities. While we are not required to follow federal law in resolving the issues before us, federal labor-law jurisprudence offers a coherent framework for our subsequent discussion and resolution of the questions raised in this case.

The National Labor Relations Act expresses a national policy of safeguarding the flow of interstate commerce and eliminating industrial strife by securing for employees the right to utilize exclusive union representation for purposes of collective bargaining, contract administration, and grievance adjustments. 29 U.S.C.A. § 151 (1988). The federal act, however, specifically exempts states and their political subdivisions from its requirements, 29 U.S.C. § 152(2) (1988). States, therefore, retain the authority to control labor relations between state and local governmental entities and their employees. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 223, 97 S.Ct. 1782, 1793, 52 L.Ed.2d 261 (1976). Although public employees are not subject to the requirements of federal labor law, federal decisions nonetheless offer guidance in re-

solving similar issues in the public sector. *American Fed'n of State, County & Mun. Employees v. City of Manchester*, 116 N.H. 665, 366 A.2d 874, 876 (1976).

### A.

Collective bargaining is the procedure which provides employees the opportunity, through the medium of union representation, to canvass their grievances, formulate their demands concerning wages, hours, and other conditions of employment, and deal with the employer to the end that labor relations may be stabilized. *N.L.R.B. v. Stow Mfg.*, 217 F.2d 900, 904 (2d Cir. 1954), *cert. denied*, 348 U.S. 964, 75 S.Ct. 524, 99 L.Ed. 751 (1955). The agreements reached between the employees' representative and the employer during the bargaining process are then memorialized in a collective-bargaining agreement which codifies the rights and duties of the parties. The collective-bargaining agreement has been described by the Supreme Court as follows:

A collective bargaining agreement is an effort to erect a system of industrial self-government. When most parties enter into contractual relationship they do so voluntarily, in the sense that there is no real compulsion to deal with one another, as opposed to dealing with other parties. This is not true of the labor agreement. The choice is generally not between entering or refusing to enter into a relationship, for that in all probability preexists the negotiations. Rather it is between having that relationship governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces. The mature labor agreement may attempt to regulate all aspects of the complicated relationship, from the most crucial to the most minute over an extended period of time. Because of the compulsion to reach agreement and the breadth of the matters covered, as well as the need for fairly concise and readable instrument, the product of negotiations (the written

document) is, in the words of the late Dean Shulman, "a compilation of diverse provisions: some provide objective criteria almost automatically applicable; some provide more or less specific standards which require reason and judgment in their application; and some do little more than leave problems to future consideration with an expression of hope and good faith." Shulman, [Reason, Contract, and Law in Labor Relations, 68 Harv.L.Rev. 999, 1005 (1955)]. Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement. Many of the specific practices which underlie the agreement may be unknown, except in hazy form, even to the negotiators. Courts and arbitration in the context of most commercial contracts are resorted to because there has been a breakdown in the working relationship of the parties; such resort is the unwanted exception. But the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580–81, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) (footnote omitted).

▮▮▮ Where the collective-bargaining agreement contains an arbitration clause for the resolution of employee grievances, the question of arbitrability is for the court to decide in the first instance, subject to the cautionary rule that the court should avoid becoming involved in the merits of a labor dispute under the guise of arbitrability. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 647, 106 S.Ct. 1415, 1417, 89 L.Ed.2d

648 (1986). "There is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Id.* at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1353). This presumption of arbitrability "recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.'" *AT & T Technologies, Inc.*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1849, 80 L.Ed.2d 366 (1984)). Once a court decides that a dispute is subject to the arbitration provisions of a collective-bargaining agreement, it is for the arbitrator, not the court, to determine the merits of the parties' substantive interpretation of the collective-bargaining agreement. *AT & T Technologies, Inc.*, 475 U.S. at 651, 106 S.Ct. at 1419; *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

### B.

▮▮▮ Where a union acts as the exclusive representative of employees, it has a duty of fair and loyal representation for and on behalf of all employees. *E.g., Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). The duty of fair and loyal representation obligates the union "to serve the interest of all members without hostility or discrimination toward any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). It has been held that the union must conform its behavior to each of these three separate standards:

First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for a civil action.

*Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW,* 469 F.2d 181, 183 (4th Cir.1972). Determining whether a union has breached its duty depends, of course, on the facts of each case and on whether the union was negotiating a collective-bargaining agreement, was engaged in contract administration under a previously executed agreement, or was administering an employee's alleged grievance under the collective-bargaining agreement.[5] *See generally,* Summers, *The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation?,* 126 U.Pa.L.Rev. 251, 254 (1977).

We deal in this case with a union's duty of fair representation in the context of grievance procedures codified in a collective-bargaining agreement. The Supreme Court addressed the question of a union's duty of fair representation in the context of employee grievances in *Vaca,* 386 U.S. 171, 87 S.Ct. 903. The Court remarked that an individual employee has no right to compel arbitration of a grievance regardless of its merit and that the union must be accorded considerable discretion in the handling and settling of an employee's grievance. *Id.* at 191, 87 S.Ct. at 917. Were the rule otherwise, "the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievance to the va-

garies of independent and unsystematic negotiation," as well as greatly increasing "the cost of the grievance machinery" and so overburdening "the arbitration process as to prevent it from functioning successfully." *Id.* at 191–92, 87 S.Ct. at 917–18. With that said, the Court, however, did not confer total discretion on the union, but attempted to fashion an appropriate standard by which to measure its conduct. *Vaca* has been construed to mean that a union may not arbitrarily or capriciously ignore or reject an employee's grievance nor undertake a patently unreasonable course of action or inaction in pursuing the grievance. *Griffin,* 469 F.2d at 183.

The type of union activity that will amount to arbitrary or bad-faith conduct in the processing of a grievance is exemplified by the case of *Smith v. Hussman Refrigerator Co.,* 619 F.2d 1229 (8th Cir.1980). In that case the employer, after interviewing thirty union-employee applicants for the position of maintenance pipefitter, promoted four of the applicants to the position based on their superior skill and ability. The twenty-six unsuccessful applicants then filed grievances, but the union chose to process only four of the grievances on behalf of those employees whose seniority was greater. As a result, three of the previously successful applicants lost their promotions and filed grievances. After the union refused to process their grievances, the employees sued the employer and the union for breach of the collective-bargaining agreement. In ordering the reinstatement of the jury verdict in favor of the three ousted applicants, the Eighth Circuit Court of Appeals held that the union breached its duty of fair representation to the three applicants by refusing to process their grievances due to their lack of seniority:

The modified seniority clause specifically required balancing the interests of

5. As a general rule, when a union is negotiating a collective-bargaining agreement with an employer, it must be allowed "[a] wide range of reasonableness ... in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman,* 345 U.S. 330,

338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). In dealing with contract administration, which is concerned with the enforcement and application of an existing collective-bargaining agreement, the union has a duty to protect the employees' interests. *Id.*

merit and seniority whenever [the employer] deemed that the position warranted selection on the basis of merit. Under the collective bargaining agreement, after the company chose to select on the basis of merit, three separate considerations were relevant in determining the right of any employee to be promoted. These were (1) a selection by the company, (2) on the basis of skill and ability, (3) superior to the skill and ability of any senior employee who had bid for the position. Disregard for the qualification of superior skill and ability could manifest an arbitrary and perfunctory approach to promotion interests, as could ignoring the qualification of seniority or selection by the company.

619 F.2d at 1239. *Hussman* thus stands for the proposition that where the collective-bargaining agreement provides for both skill and seniority as the criteria for promotion, the union cannot choose to reject a grievance by unsuccessful applicants who, although lacking seniority, nonetheless are more qualified by skill for the position.

One commentator, cited and quoted with approval by the *Hussman* court, summarized the union's duty of fair representation in the context of employee grievances as follows:

> When the union's effort to represent a member of the collective bargaining unit falls below the level at which the court can conclude that the union has made a conscious, earnest effort to represent him, liability should flow. Upon a claim of substandard treatment, the union should be required to come forward with evidence to show why it followed the course of representation that it did. If the union's behavior is based on a conscious assessment of fairly competing values, it should be given broad discretion in its choice of representation tactics. But the union should not be allowed to plead, in effect, that it chose the easier path because of convenience or rigid adherence to "union policy."

Bryson, *A Matter of Wooden Logic: Labor Law Preemption and Individual Rights,* 51 Tex.L.Rev. 1037, 1102 (1973).

It is against this backdrop of federal labor-relations law that we turn to the issues before us.

### III.

We first address whether Shorey's grievance for which the association requested arbitration was beyond the scope of level-three arbitration under the collective-bargaining agreement. We conclude, as did the court of appeals, that Shorey's grievance was within the terms of the arbitrability provisions of the agreement.

Basic principles of labor-law jurisprudence point the way to a proper resolution of this issue. "[T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance— is undeniably an issue for judicial determination." *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418. Furthermore, a court, in deciding the issue of arbitrability, should not rule on the merits of the underlying claim but, rather, should relegate that issue, in accordance with the intent of the parties, to the arbitrator. *Id.* at 650–51, 106 S.Ct. at 1419. Finally, in the absence of an affirmative demonstration that the dispute is patently outside the arbitration provisions of the collective-bargaining agreement, there is a presumption of arbitrability with respect to employee grievances. *Id.* at 650, 106 S.Ct. at 1419; *see Cabs, Inc. v. Delivery Drivers, Warehousemen and Helpers Local Union No. 435,* 39 Colo.App. 241, 244–45, 566 P.2d 1078, 1080–81 (1977). It follows from these principles that where a union or employee association, which is a party of the collective-bargaining agreement, shows that the agreement contains an arbitration provision with respect to employee grievances and that the employer has refused to arbitrate, a court must order the parties to proceed with arbitration unless the court can say "with positive assurance" that the arbitration provision is not susceptible of any interpretation that encompasses the subject matter of the dispute. *AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419; *see Warrior & Gulf*

*Navigation,* 363 U.S. at 584–85, 80 S.Ct. at 1354; *Cabs,* 39 Colo.App. at 244–45, 566 P.2d at 1080–81; §§ 13–22–203 & 204(1), 6A C.R.S. (1987).

In the instant case, section 7–4–3–1 of the agreement expressly authorized the association to request level-three arbitration before an umpire if "the aggrieved person and/or the Association is not satisfied with the disposition of a grievance at Level Two" and if the association "deems the grievance meritorious." Moreover, there is no question that the school district refused to participate in level-three arbitration. Notwithstanding these undisputed facts, the school district argues that the successful level-one resolution of the Krenek grievance, initiated by the association on behalf of Krenek, constituted a compromise and settlement of Shorey's grievance in which the association acquiesced. We find the school district's argument factually and legally unsound.

Although both Krenek's and Shorey's grievances involved the promotional criteria of section 34–4–3 of the collective-bargaining agreement, Krenek's grievance was based on a claim of seniority status, while Shorey's grievance proceeded from a claim of superior qualifications for the Standley Lake High School position. The association, so far as the record shows, was never given the opportunity to meet with the Standley Lake High School principal at the level-one phase of the grievance process to discuss and objectively assess the merits of Krenek's grievance vis-a-vis Shorey's qualifications and her prior appointment to the position sought by Krenek. It would be nothing short of a quantum leap in logic to conclude from these circumstances that the association somehow agreed that Krenek should replace Shorey for the library media specialist position at Standley Lake High School.

Given the language of section 7–4–3–1 of the agreement, it cannot be said "with positive assurance" that the arbitration provision of the agreement patently excludes the arbitrability of Shorey's grievance at level-three arbitration before an umpire. The question of whether Shorey was enti-tled to be appointed to the Standley Lake High School position, therefore, was within the arbitrability provisions of section 7–4–3–1 of the agreement and was an issue for the umpire to determine at level-three arbitration.

IV.

■■■ We next address whether, as argued by the school district, the association was equitably estopped from seeking arbitration on Shorey's grievance after Krenek's level-one grievance had been filed and resolved in her favor. We hold that the doctrine of equitable estoppel, when analyzed in light of the association's duty of fair representation to its members in the grievance process, did not bar the association from seeking arbitration on behalf of Shorey.

■■■ Equitable estoppel is not a favored doctrine. *E.g., University of Colorado v. Silverman,* 192 Colo. 75, 79, 555 P.2d 1155, 1158 (1976). Before the doctrine may be applied as a bar, there must be a clear showing of each of the following four elements: the party against whom the estoppel is asserted must know the facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct. *E.g., Dove v. Delgado,* 808 P.2d 1270, 1275 (Colo.1991); *Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984).

The record does not support the application of equitable estoppel to the circumstances present here. First, there is no evidence to indicate the association's awareness of operative facts that would support an estoppel. Bearing in mind the narrow discretion available to a union when processing an employee grievance, the association had a duty of fair representation to both Krenek and Shorey during the level-one and level-two phases of the grievance process. It was only upon the completion of the level-two hearing that the association was required, pursuant to section 7–

4-3-1 of the agreement, to determine whether a particular grievance was sufficiently "meritorious" to request level-three arbitration. Second, although the association obviously intended that the Krenek grievance be acted upon by the school district, there is no evidence to suggest that the association intended its filing of the Krenek grievance to be construed by the school district as the association's irrevocable decision that Krenek's grievance, to the exclusion of Shorey's, was meritorious.

With respect to the third element of equitable estoppel, we believe the record does establish that the school district, throughout the level-one phase of Krenek's grievance, was ignorant of the true facts concerning the association's position on the merits of Shorey's grievance. However, we are satisfied that, with respect to the fourth element, the school district had no basis to construe and detrimentally rely on the association's filing of the Krenek grievance as an admission that the association would not file and pursue a grievance on behalf of Shorey. The school district was well aware, or at least should have been aware, that the association, as the exclusive representative of the teachers, had a duty of fair representation of both Krenek and Shorey in the grievance process. Furthermore, the school district must be charged with knowledge of the terms of the collective-bargaining agreement. Section 34-4-3 of the agreement required the school district to consider several factors in choosing the best qualified applicant for the position of library media specialist, including ability and seniority, and section 7-4-3-1 required the association to evaluate the merits of a particular grievance only upon completion of a level-two hearing before an umpire. Krenek based her grievance on her seniority status, while Shorey's grievance was based on her superior qualifications for the position and was filed only after the favorable resolution of Krenek's grievance. The association, however, was never afforded the opportunity to discuss and evaluate the factual merits of Krenek's grievance with the high school principal who was acting in the capacity of Krenek's immediate supervisor at the level-one re-

view of Krenek's grievance. In light of the fact that Krenek's grievance was resolved favorably to her at the level-one phase of the grievance process without any opportunity for the association to provide input into whether Krenek or Shorey more adequately satisfied the criteria of section 34-4-3, the association well might have breached its duty of fair representation to Shorey if, after it had elected to file Krenek's grievance based on her seniority status, it had ignored the grievance of Shorey because it was based not on Shorey's seniority but on her alleged superior qualifications for the position. *Hussman Refrigerator Co.*, 619 F.2d at 1240.

Simply stated, the association, under the circumstances of this case, properly acted to protect both Krenek's and Shorey's interest by processing both grievances for a level-one meeting and, in the case of Shorey, by processing her grievance for a level-two hearing. There thus is no basis for sustaining the trial court's entry of summary judgment on the theory that the association was equitably estopped from seeking level-three arbitration for Shorey's grievance solely because it previously had processed a level-one grievance on behalf of Krenek.

V.

The final issue for our consideration is whether Shorey, as a member of the association which entered into the collective-bargaining agreement with the school district, has an independent right to sue the school district for breach of the agreement. We hold that Shorey has legal standing to sue the school district as a third-party beneficiary of the agreement, but that for reasons hereinafter stated her contractual claim should be stayed pending exhaustion of the grievance process established by the collective-bargaining agreement.

A.

A collective-bargaining agreement is not a contract of employment between the employer and the individual employee. Rather, "it is an agreement be-

tween the union and employer laying down certain conditions of employment which, it is contemplated, are to be incorporated in the separate contracts of hiring with each employee." *MacKay v. Loew's, Inc.,* 182 F.2d 170, 172 (9th Cir.1950) (applying California law). A basic rule of contract law is that "a person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claim is a direct and not merely an incidental benefit of the contract." *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.,* 704 P.2d 859, 865 (Colo. 1985). The intent to benefit the third party must be "apparent from the terms of the agreement, the surrounding circumstances, or both." *Id.* at 865. In keeping with this fundamental rule, several cases have held that the employee may sue the employer as a third-party beneficiary of the collective-bargaining agreement in order to enforce those provisions of the agreement which have been negotiated between the employer and the union for the employee's benefit. *E.g., MacKay,* 182 F.2d 170; *Rockey v. School Dist. No. 11,* 32 Colo.App. 203, 508 P.2d 796 (1973); *Kaddish v. New York Evening Journal,* 67 N.Y.S.2d 435 (N.Y.App.Div.1946); *Sublett v. Henry's Turk & Taylor Lunch,* 21 Cal.2d 273, 131 P.2d 369 (1942); *McGee v. St. Joseph Belt Railway Co.,* 233 Mo.App. 111, 93 S.W.2d 1111 (1936). We agree with the reasoning of those cases.

▮ In the instant case, the comprehensive scope of the agreement between the school district and the association supports the conclusion that both parties to the agreement intended it to govern a wide range of employment conditions including, as reflected in section 34–4–3 of the agreement, the criteria applicable to the voluntary transfer of an employee to an open position within the district. Those transfer provisions were intended to benefit teachers within the school district by requiring the district to resolve applications for voluntary transfers to other higher-level positions on the basis of the individual teacher qualifications, individual requirements for the position, experience in the teaching field for which the application is made, proportionate distribution within the faculty of experienced and inexperienced teachers, and, when all of the foregoing criteria are substantially equal, the greatest length of service in the district. Shorey, as a full-time teacher within the school district, is an intended beneficiary of those provisions of the collective-bargaining agreement directly relating to her application for the position of library media specialist at Standley Lake High School. As a remedy for the school district's alleged breach of the collective-bargaining agreement, Shorey has a right to sue for damages on her breach of contract claim where, as here, the district has repudiated the grievance process by refusing to participate in level-three advisory arbitration.

### B.

▮ In urging that Shorey lacks standing to pursue her claim for breach of contract, the school district contends that the collective-bargaining agreement contemplates that level-three arbitration is Shorey's exclusive remedy for breach of the agreement. We find this argument lacking in merit under the circumstances of this case.

In *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 658, 85 S.Ct. 614, 619, 13 L.Ed.2d 580 (1965), which involved a common-law claim for breach of contract by an employee against his employer, the Supreme Court addressed the exclusivity-of-remedy question. The collective-bargaining agreement in *Maddox* stated that the purpose of the grievance process was "to provide procedure for prompt, equitable adjustment of claimed grievances;" that there was a thirty-day period for filing a grievance; that an aggrieved employee "may discuss the alleged complaint" with the employer in an attempt to settle it; and that the grievance "shall be handled" in accordance with a two-step process followed by binding arbitration. In holding that the "may discuss the complaint" language of the agreement did not render the grievance process nonexclusive and that, consequently, the employ-

ee was first required to exhaust the grievance process before suit, the Court stated:

> Use of the permissive "may" does not of itself reveal a clear understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation.

379 U.S. at 658–59, 85 S.Ct. at 619. Under *Maddox*, therefore, where the grievance procedure in a collective-bargaining agreement is the "exclusive" remedy available to an employee, the employee must utilize and exhaust the grievance process before filing a claim for breach of contract against the employer.

We followed *Maddox* in *Albertson's, Inc. v. Rhoads*, 196 Colo. 159, 582 P.2d 1049 (1978), which involved a common-law wrongful discharge claim by a union employee. The collective-bargaining agreement in *Albertson's* stated that "[t]he Union *may* present a grievance" and further stated that "[g]rievances *shall* be handled in the following manner." Noting that under *Maddox* all doubts must be resolved in favor of exclusivity, we reasoned that "the use of the term 'may' was not intended to allow individual employee suits as an alternative to the grievance procedure" but was simply intended as "a general grant of power to the union to present grievances." 196 Colo. at 161, 582 P.2d at 1050. Because the plaintiff-employee had not exhausted the grievance process before filing suit, we held that it was improper for the trial court to consider the employee's claims.

■ In the instant case, the grievance procedure outlined in the collective-bargaining agreement satisfies the exclusivity rule of *Maddox* and *Albertson's*. Section 7–3–1 of the agreement states that an employee's grievance must be presented "at the appropriate level" within thirty days and that if not presented "will be considered as waived." In addition, section 7–4–2–1 states that the association "shall file a grievance" with the school district's office of employee relations where, as here, the grievance was previously filed at level-one "but was not resolved to the satisfaction of the grievant or the [a]ssociation." Although section 7–4–3–1 provides that the association "may, if it deems the grievance meritorious, request a [level-three] hearing before an umpire," the use of the permissive "may" section, when analyzed in the context of the entire agreement, is not sufficient to overrule the presumption of exclusivity.

■ Both the factual circumstances and the holdings of *Maddox* and *Albertson's* make clear that the exclusivity rule in the context of the grievance process of a collective-bargaining agreement does not mean that the grievance process is the only remedy available to the employee, but rather refers to the fact that the employee is obligated to utilize and exhaust the grievance process before resorting to a private judicial remedy. Several exceptions to the exhaustion rule, however, have been recognized. One such exception involves the situation where "the conduct of the employer amounts to a repudiation" of the grievance-procedure contained in the collective-bargaining agreement. *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914.[6] In that situation "the employer is estopped by [its] own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Id.* The employee, therefore, when confronted with the employer's repudiation of the grievance process, is not limited to the grievance procedure of the collective-bargaining agreement and may sue the employer for breach of contract. *Id.; see Albertson's*, 196 Colo. at 162, 582 P.2d at 1050 (acknowledging

---

**6.** Other exceptions to the exhaustion rule have been recognized when the union has wrongfully refused to process the employee's grievance and thereby prevents the employee from exhausting the contractual remedies, *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), and when the effort to proceed with the contractual remedies would be wholly futile, *Glover v. St. Louis–San Francisco R. Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969).

that the existence of extraordinary circumstances can dispense with the exhaustion requirement of the exclusivity rule).

Under the particular circumstances of this case, the fact that the grievance procedure satisfies the exclusivity rule does not defeat Shorey's independent standing to sue the school district for breach of contract. Prior to the filing of Shorey's and the association's complaint in the district court, the school district repudiated level-three advisory arbitration and thereby prevented Shorey and the association from exhausting the grievance process expressly authorized by the agreement. In light of the school district's repudiation of the grievance process before the commencement of the district court action, Shorey was not bound by the exhaustion requirement of the exclusivity rule before filing her breach of contract claim in the district court.

■ Although Shorey has standing as a third-party beneficiary to sue the school district for breach of contract, we are satisfied that the court of appeals correctly ordered a stay of her contractual claim pending completion of level-three arbitration. The court of appeals' stay order was consistent with the rule of exhaustion announced in *Maddox*, 379 U.S. 650, 85 S.Ct. 614, and *Albertson's*, 196 Colo. 159, 582 P.2d 1049, which requires an aggrieved employee to utilize and exhaust the grievance process before resorting to a private judicial remedy. A contrary result would be disruptive of the grievance process established in the collective-bargaining agreement. Before Shorey may proceed with her claim for breach of contract against the school district, therefore, Shorey must afford the association the opportunity to act on her behalf, *Maddox*, 379 U.S. at 653, 85 S.Ct. at 616, in resolving her grievance pursuant to the grievance process authorized by the collective-bargaining agreement.

### C.

■ The school district, relying on federal precedent reflecting a judicial reluctance to become involved in private industrial grievances, *e.g.*, *Black–Clausen Co. v. International Assoc. of Machinists Lodge 355, Dist. 137*, 313 F.2d 179 (2d Cir.1962), contends that permitting an individual employee to sue the employer for breach of the collective-bargaining agreement undermines the collective-bargaining process. We see no reason why countenancing an employee's lawsuit for damages based on an alleged breach of contract by the employer interferes in any way with the association's ability to engage in collective bargaining with the school district. Our view is based on the distinction between "interest" arbitration and "grievance" arbitration. Interest arbitration involves disputes concerning the terms and conditions of employment that arise during negotiations leading to the formation of a collective-bargaining agreement, while grievance arbitration involves individual employee claims arising under the terms of a previously executed collective-bargaining agreement. *City and County of Denver v. Denver Firefighters*, 663 P.2d 1032, 1036 (Colo. 1983). We agree with the proposition that allowing employees to bargain independently with the employer to ensure that their particular interests are included in the collective-bargaining agreement would jeopardize the union's ability to act as the exclusive representative of the employee members of the collective-bargaining unit. It does not follow from that proposition, however, that granting an employee an independent right to sue the employer for damages on a breach of contract theory for violating those provisions of a collective-bargaining agreement intended to benefit the employee, as distinguished from suing the employer on a claim for specific performance of an arbitration clause in a collective-bargaining agreement, *see Thomas v. Thompson School Dist. R2–J*, 749 P.2d 966 (Colo.App.1987) (teachers' union, and not individual teacher, can compel arbitration under collective-bargaining agreement), will interfere in any substantial way with the union's ability to collectively negotiate a collective-bargaining agreement in the first instance or to administer the collective-bargaining agreement on behalf of its members after the agreement is exe-

cuted. We thus conclude that Shorey has standing as a third-party beneficiary of the collective-bargaining agreement to sue the school district for breach of contract, but that, pursuant to the exhaustion rule applicable to the grievance process, her claim for breach of contract must be stayed pending resolution of her grievance in accordance with the grievance process established by the collective-bargaining agreement.

## VI.

In summary, we hold as follows: that Shorey's grievance alleging that she should have been selected for the position of library media specialist at Standley Lake High School is not patently outside the provisions relating to level-three arbitration before an umpire and that, therefore, the issue of Shorey's entitlement to that position is for the umpire to determine at level-three arbitration; that the association is not equitably estopped from seeking arbitration on behalf of Shorey merely because it previously filed Krenek's grievance which was favorably resolved in Krenek's favor; and that Shorey, as a teacher of the school district and a third-party beneficiary of the collective-bargaining agreement between the association and the school district, has standing, under the particular circumstances of this case, to sue the school district for breach of those provisions of the collective-bargaining agreement intended for the benefit of Shorey and other teachers seeking voluntary transfers to open positions within the district.

We accordingly affirm the judgment of the court of appeals, including that part of the judgment which directs the trial court to stay further proceedings on Shorey's breach of contract claim pending completion of level-three arbitration of Shorey's grievance.

VOLLACK, J., dissents.

Justice VOLLACK dissenting:

The majority holds that Shorey, as a third-party beneficiary of a collective-bargaining agreement, may sue the school district for breach of the provisions of the collective-bargaining agreement. I dis-

agree. Shorey's grievance is that the school district failed to comply with a provision in the collective-bargaining agreement and proceed to a level-three arbitration hearing. Accordingly, her remedy is to have the Association pursue her grievance through the grievance procedures set forth in the collective-bargaining agreement. *See Thomas v. Thompson Sch. Dist. R2–J*, 749 P.2d 966 (Colo.App.1987). Since the Association has brought suit to enforce the collective-bargaining agreement and compel level-three arbitration on her behalf, Shorey has no standing to bring a separate breach claim under article 34–4–3 of the agreement. Until the Association, as Shorey's bargaining agent, terminates its representation of her, the claim is premature and should be dismissed.

## I.

The Jefferson County Education Association (the Association) and the Jefferson County School District No. R–1 Board of Education (the District) were parties to a collective-bargaining agreement (the collective-bargaining agreement or the agreement). Under this agreement, the Association is "the exclusive representative of teachers employed by the District." Article 3–3. The agreement also sets forth a grievance procedure "to provide a fair, formal and expeditious manner of resolving differences" "concerning the interpretation or application of the Agreement or related matter."

On November 5, 1987, Shorey received notice that she had been granted a transfer for a position at a high school in Jefferson County. Later that month, she was notified that her transfer had been granted in error and that the position had been given to another teacher who had a greater length of service in the district. On November 30, 1987, pursuant to article 7–4–1–1 of the collective-bargaining agreement, Shorey and the Association initiated a level-one grievance by filing a grievance with the office of employee relations. The grievance alleged that the District had violated article 34–4–3, which lists criteria that

the District must follow in selecting a teacher for a voluntary transfer.[1] This grievance was signed by an Association representative, as required by article 7–4–1–1. After a meeting between Shorey and her immediate supervisor, the grievance was denied.

Pursuant to article 7–4–2–1, the Association then filed a level-two grievance, requesting a level-two hearing. After a hearing, the level-two umpire denied this grievance. Upon receiving this decision, the Association reviewed Shorey's grievance, pursuant to its duties under article 7–4–3–1,[2] and determined that the grievance was meritorious. Accordingly, the Association requested a level-three hearing. The school district denied the Association's request for a level-three hearing.

The Association and Shorey filed a complaint in district court against the District. The Association alleged that the District failed to comply with articles 34–4–3 and 7–4–3–1. The Association requested that the court compel the District to arbitrate, issue an injunction, and assess damages. Shorey, individually, alleged that the District had breached the agreement when it "failed and refused to comply" with Article 34–4–3. She based her claim on a third-party beneficiary theory, and requested reinstatement and damages.

The majority agrees with Shorey, and concludes that she has an independent right to sue the District for its failure to comply with article 34–4–3. I disagree. In so concluding, the majority disregards the basic premise of labor law and collective-bargaining agreements that a union is the exclusive representative for an employee

who claims a grievance based on violations of a collective-bargaining agreement.

## II.

The general rule in labor law is that individual employees covered by a collective-bargaining agreement must redress their contract grievances through the grievance procedure established in the collective-bargaining agreement. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Roman v. United States Postal Serv.,* 821 F.2d 382, 386 (7th Cir.1987); *Commack Univ. Free Sch. Dist. v. Ambach,* 70 N.Y.2d 501, 522 N.Y.S.2d 831, 835, 517 N.E.2d 509, 513 (1987); *see also Albertson's, Inc. v. Rhoads,* 196 Colo. 159, 161–62, 582 P.2d 1049, 1050 (1978) (recognizing that employee may not maintain a lawsuit unless the employee has exhausted grievance procedures in collective-bargaining agreement). "Unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his [or her] behalf." *Maddox,* 379 U.S. at 650, 85 S.Ct. at 614. As the Court stated in *Maddox,*

[a] contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances.

*Id.* at 653, 85 S.Ct. at 616–17.

If the union breaches its duty of fair representation, an employee can bring a

1. The criteria set forth in article 34–4–3 are:
    A. Individual teacher qualifications.
    B. Individual requirements of the open position, as specified in the job requisition.
    C. Experience in the teaching field for which application is being made.
    D. Proportionate distribution within a given faculty of experienced and inexperienced teachers.
    E. When the foregoing are substantially equal, preference in assignment or transfer shall be given to the incumbent applicant with the greatest length of service in the District.

2. This article provides as follows:

If the aggrieved person and/or the Association is not satisfied with the disposition of a grievance at Level Two, or if no decision has been rendered within ten (10) school days after the area superintendent [the Level Two umpire] has heard the grievance, *the Association may,* if it deems the grievance meritorious, request a hearing before an umpire. Such request must be submitted in writing within fifteen (15) school days after the Association receives a Level Two decision, or twenty-five (25) school days after the Level Two hearing, whichever is sooner.

suit for breach of the collective-bargaining agreement. *See Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); Robert C. Gorman, *Labor Law Unionization and Collective Bargaining* § 8, at 721 (1976); *Bailey v. Beaver Precision Prods., Inc.*, 678 F.Supp. 684 (E.D.Mich.1988) (union member's failure to exhaust internal grievance procedures was not excused absent any allegations that union had wrongfully refused to proceed with grievance).[3]

The majority, based on a third-party beneficiary analysis, states that "[a]s a remedy for the school district's alleged breach of the collective-bargaining agreement, Shorey has a right to sue for damages on her breach of contract claim." Maj. op. at 843. This conclusion is in direct conflict with the general principles stated above.[4] By recognizing that Shorey has an independent claim for relief, Colorado will be the first jurisdiction—federal or state—that ·allows an employee to "sidestep" a grievance procedure in favor of a lawsuit, where a union is the employee's exclusive representative and is enforcing the Agreement on the employee's behalf.

Shorey's grievance involves "a dispute, disagreement or controversy concerning the interpretation or application of this Agreement or related matter." The collective-bargaining agreement sets forth a grievance procedure to remedy such dis-

putes and designates the Association as the exclusive representative of the employees. As long as the Association is fairly representing Shorey and pursues her grievance, we do not need to consider whether Shorey has independent standing to sue.

### A.

In support of its conclusion, the majority finds the District's argument that the grievance and arbitration procedures provided in the collective bargaining agreement are Shorey's exclusive remedy for breach of the Agreement lacks "merit under the circumstances of this case." Maj. op. at 843. The majority states that, even though the grievance procedure is the exclusive remedy, Shorey still has standing to sue because "the school district *repudiated* level-three arbitration and thereby prevented Shorey and the association from exhausting the grievance process." *Id.* at 845 (emphasis added).

The majority relies on *dicta* in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), to support its contention that the District's conduct in this case amounted to a repudiation of the Agreement.[5] In my opinion, however, the District's conduct was not a repudiation of the arbitration provision or the Agreement.

The District has neither rescinded the Agreement, nor permanently refused to ar-

---

**3.** Case law and authorities also recognize that an employee can bring a breach of contract suit where there is proof of some independent employer wrong that amounts to a repudiation of the agreement, *see Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Merk v. Jewel Food Stores Div., Jewel Co., Inc.*, 702 F.Supp. 1391, 1396 (N.D.Ill.1988); Robert C. Gorman, *Labor Law Unionization and Collective Bargaining* § 8, at 721 (1976), or when resort to the grievance procedures would be futile. *See Glover v. St. Louis–San Francisco R.R.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

**4.** Furthermore, our statutes reflect a decided preference for private settlement of labor disputes without the intervention of the courts. Section 8–1–123, 3B C.R.S. (1986), provides:

The director shall do all in his power to promote the voluntary arbitration, mediation, and conciliation of disputes arising under an existing written agreement between employ-

ers and employees and to avoid the necessity of resorting to strikes, lockouts, boycotts, blacklists, discriminations, *and legal proceedings in matters of employment.*
(Emphasis added.) This preference is also reflected in federal labor law. *See* 29 U.S.C. § 173(d).

**5.** In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the employee sued his union, alleging wrongful discharge and that the union had unfairly represented him. One of the issues addressed by the court was whether the employee must exhaust his remedies under the grievance procedures if the union unfairly represents the employee. The Court concluded that the employee can bring an action against his employer without exhausting the grievance procedure if the employee can prove that the union breached its duty of fair representation. *Id.* at 184–86, 87 S.Ct. at 913–15. In *dicta*, the Court recognized repudiation as another exception to the exhaustion requirement.

bitrate grievances. They have simply taken a stance contrary to Shorey and the Association with respect to the grievance. By concluding that this conduct constitutes a repudiation, the majority "confuses repudiation of the grievance procedure and a refusal to accept an employee's position with respect to a grievance." *Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 520 (5th Cir.1978). "An employer can obviously take a stance contrary to that of the employee during the grievance process without being deemed to have repudiated that process." *Id.*[6] *See also Robbins v. George W. Prescott Publishing Co.*, 457 F.Supp. 915, 921 (1978) (rejecting repudiation claim and recognizing holding in *Rabalais*). Moreover, taking a contrary stance during the grievance process certainly does not constitute an *"extraordinary circumstance"* under *Albertson's, Inc. v. Rhoads*, 196 Colo. 159, 162, 582 P.2d 1049, 1050 (1978).

### B.

The majority concludes that Shorey and the Association were prevented from exhausting the grievance process. As part III. of the majority's opinion indicates, this is simply not the case. The majority holds that the District must arbitrate Shorey's grievance. Maj. op. at 840–841. Thus, Shorey has not been prevented from pursuing arbitration.

In this appeal, once we determined that the District's alleged breach was within the scope of the arbitration provision, the question of whether Shorey had an independent right to sue became moot. *See* 6A *Corbin on Contracts* § 1443, at 436 (1962) (If the court finds that the alleged breach is within the scope of the arbitration provision, "the court's function is over (except to enforce arbitration).").

The majority's conclusion that Shorey was prevented from pursuing arbitration in this case also disregards and undermines the Association's duties and responsibilities under the Agreement. The Agreement maintains that the Association is the exclusive representative of the employee. The Association fairly and adequately represented Shorey through the first two levels, and is continuing to represent her now.

### III.

In part V.C., the majority rejects the District's contention that "permitting an employee to sue the employer for breach of the collective-bargaining agreement would undermine the collective-bargaining process." Maj. op. at 845. By doing so, the majority is in conflict with its discussion in part V.B., where it stated that allowing Shorey to pursue her claim "would be disruptive of the grievance process established in the collective-bargaining agreement." *Id.* at 845.

In this part of its opinion, however, the majority does not see any reason why allowing such a lawsuit would interfere with the Association's ability to engage in collective-bargaining with the District. *Id.* at 845. This conclusion is inconsistent with the majority's statement in part III.B. that Shorey "must afford the association the opportunity to to act on her behalf ... in resolving her grievance."

This conclusion is also contrary to the generally accepted principles of collective-bargaining set forth in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580–81, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), as cited by the majority. Maj. op. at 837–838. "It must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). Under collective-bargaining agreements, "unless the contract provides otherwise, there can

---

6. In *Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518 (5th Cir.1978), the parties participated in the first three stages of the grievance process, but neither the employer nor the union sought arbitration. The employee sued and the employer defended on the ground that the employee failed to exhaust his contractual remedies. *Id.* at 519. The employee argued "that there was a repudiation because the employer did not consider the claim a proper subject of a grievance." *Id.* at 520. The court rejected this argument.

be no doubt that the employee must afford the union the opportunity to act on his behalf." *Maddox,* 379 U.S. at 650, 85 S.Ct. at 614.

To allow an employee to "side-step" the grievance procedure and bring a suit not only undermines the collective-bargaining process, but also undermines the Association's position as the representative of the employees under the collective-bargaining agreement. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). The majority's distinction between interest arbitration and grievance arbitration is mere semantics because such a distinction disregards the importance of the Association's duty to represent an employee during a grievance proceeding brought under a collective-bargaining agreement.

I respectfully dissent.