No. 23020.

United Press International, Inc., a New York corporation *v.* The Sentinel Publishing Co., a Colorado corporation.

(441 P.2d 316)

Decided May 27, 1968.     Rehearing denied June 17, 1968.

48

BAKER, HOSTETLER & PATTERSON, JONATHAN E. THACK-ERAY, TRAYLOR, KLADDER, HARSHMAN & PALO, WINNER, BERGE, MARTIN and CAMFIELD, for plaintiff in error.

LESLIE A. GROSS, BERNARD D. STEINBERG, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE MOORE.

WE will refer to plaintiff in error as United Press and to defendant in error as the Sentinel.

On November 20, 1963, United Press and Sentinel entered into a contract for the delivery by United Press to Sentinel of a newspicture service identified in the contract as "Full Leased Line Newspicture Service." After performance of about one month under the contract the operation was suspended by mutual agreement until November 21, 1965, at which time delivery of the service and acceptance thereof by Sentinel was resumed. Following the period of suspension the original expiration date of the contract was extended to October 11, 1967. From November 21, 1965 until September 8, 1966, the service was supplied to Sentinel by United Press. The court suspended further performance by either party *pendente lite* as of the latter date.

Sentinel filed its complaint on August 15, 1966. In its first claim for relief it asked a declaratory judgment the effect of which would be to nullify the contract on the ground that "the instrument lacks mutuality and that any agreement purportedly created by it is illusory and unenforceable." Specifically it is alleged that the promises of United Press are too indefinite for legal enforcement in that: (1) Its agreement to supply Sentinel with "Full Leased Line Newspicture Service" is a promise to supply something not defined in the contract since the term used is not a "term of apparent meaning"; (2) United Press reserved to itself an unlimited right to raise the contract price to be paid by Sentinel ($111 per week) for the newspicture service in "cumulative amounts of up to 25% and 15%, aggregating 40% of the otherwise stipulated price, upon the happening of certain loosely drawn contingencies which may increase defendant's [United Press] costs"; and (3) that the promise of United Press to "use its best efforts to obtain" for Sentinel pictures not included in the news-

picture service which were especially requested by it, is an unenforceable agreement because of the clause in the contract which states that United Press shall not "be bound to attempt to obtain any such picture so requested."

With reference to (3) above, counsel for Sentinel asserts that the arrangements made for securing pictures on special request for an additional fee constitutes a "minor, severable aspect of the instrument," and asked that it be eliminated "from further consideration so that the court will focus its attention on the issue relating to newspicture service." To this procedure United Press offers no objection and we accordingly dismiss the matter contained in (3) from further discussion.

Sentinel contended in the trial court that the contract on its face could not be upheld as a valid instrument because at no place therein does United Press agree to do any or all of the following:

"i. To furnish plaintiff with good quality, printable photos in correct focus.

"ii. To furnish plaintiff with photos of appropriate variety and quantity.

"iii. To furnish plaintiff with newsworthy, current photos, informative and of interest to readers of plaintiff's daily newspaper.

"iv. To obtain photos on special request of plaintiff promptly and diligently.

"v. To relate price increases only to the pro-rata increase in defendant's costs in providing service under the agreement to plaintiff."

Sentinel's argument both in the trial court and in this court was, and is, that since none of the foregoing "essentials" are contained in the contract by express provision or by implication, United Press has promised nothing.

On the day set for hearing on the issues the trial court, without taking any evidence, summarily disposed

of the case by entry of an order in which it was stated that the court:

"DOTH FIND, ASCERTAIN AND DETERMINE that there is no disputed issue of fact to be tried on the threshhold (sic) question as to the existence of a legally binding contract subsisting between the parties hereto; both parties admit the existence and execution of an instrument (Exhibit A), but they differ diametrically as to the legal efficacy of such instrument; that parol evidence would be inadmissible to establish a contract at variance with the terms of the written instrument (Exhibit A) or to resolve latent ambiguities as to the meaning of terms or as to the intention of the parties — there being no such infirmity; that the issue as to whether there is a contract is a question of law which does not require a consideration or resolution of issues raised on: affirmance by virtue of performance, waiver, quantity and quality of performance by Defendant, specific performance entitlement, and measure of damages for breach of contract, if any; that all such issues are rendered moot *in limine* by virtue of the specific finding that the understanding between the parties reduced to the writing which comprises Exhibit A never attained the dignity of a legally binding contract because of the fatal lack of enforceable obligation appurtenant to any performance of the Defendant within the purview of Exhibit 'A'. * * *

\* \* \*

"A simple advertence to the document purporting to delineate the reciprocal undertakings of the parties herein involved engenders the conclusion that the Defendant was obligated to do nothing, but that if, as and when pictorial service of whatsoever kind or quantity was furnished to the Plaintiff by the Defendant, Plaintiff was required to honor its bank acceptance of a $111.00 draft per week for a specified term with certain price escalations upward in the event of additional or different service. Plaintiff paid for the service until September

8, 1966; to this extent the agreement of the parties has become executed as a matter of law; however, the Plaintiff having elected to terminate the arrangement between the parties, the Court finds that such election should be given full force and legal effect as of September 8, 1966, which is the date upon which all performance was suspended by order of Court *pendente lite*; * * *."

In the complaint filed by Sentinel a second claim for alternative relief was set forth in which it was asserted that, in the event the court found the contract was enforceable, United Press had violated the "implied covenants" necessarily included therein and that Sentinel was justified in terminating the contract because of nonperformance on the part of United Press. The trial court, having disposed of the case in favor of Sentinel on the first claim, gave no consideration to any of the issues framed on the claim for breach of contract.

As grounds for reversal of the judgment it is argued by counsel for United Press, *inter alia,* that:

"II. The contract does not lack mutuality.

"A. The contract shows on its face substantial consideration flowing from UPI to plaintiff.

"B. Where precise advance designation of details of performance is impossible, the law permits a contract not specifying such details to be valid and binding.

"C. Implied terms in the contract further limit UPI's right to determine the nature and extent of its performance.

"III. The contract is not rendered illusory by UPI's limited power to raise the price upon the happening of certain specified events.

"IV. The district court erred in refusing to permit the introduction of evidence."

We hold that the arguments advanced under points II, III and IV above are well taken. The main thrust of the argument of counsel for United Press is in support of the contention that the trial court erred in reaching

the conclusion that the agreement between the parties "never attained the dignity of a legally binding contract because of the fatal lack of enforceable obligation appurtenant to any performance * * *" on the part of the United Press.

An analysis of the contract discloses that United Press agreed to provide Sentinel with a telephoto facsimile machine; to use its best efforts to obtain particular pictures specially requested by Sentinel; and to deliver to Sentinel the United Press Full Leased Line Newspicture Service. The meaning of the phrase "Full Leased Line Newspicture Service" is not immediately clear to a layman. Nevertheless, the court below refused to hear any evidence whatever showing what the phrase meant to the parties or in the newspaper trade generally. Instead, the court held in effect that because UPI could not describe in the contract the newspictures it would deliver in the future, the contract obligated it to do nothing.

It is not true, as claimed by Sentinel, that by the terms of the contract United Press "reserved" to itself an unlimited right to determine the nature and extent of its performance. Of necessity the content of "Full Leased Line Newspicture Service" is determined by news events as they occur. The contract contains implied terms, one of which is that United Press will in good faith produce a newspicture service which will be suitable for use in newspapers.

The central issue to be determined is whether the bilateral contract between UPI and the Sentinel lacks mutuality. Such a contract must contain promises by each party thereto — the promise of one party is the consideration for the promise of the other. If one party in fact promises nothing, there is no mutuality and no contract. The basic question is one of consideration. Adequacy of the consideration is not controlling in the instant case.

We hold that the obligations imposed upon

United Press by the contract are substantial and are described with sufficient certainty in the contract to be enforceable. The contract is not lacking in mutuality. As stated in Restatement of Contracts §81 Comment: a. (1932),

"It is a general rule * * * that whatever consideration a promisor assents to as the price of his promise is legally sufficient consideration."

We belabor the point no further. It is sufficient to say that the contract on its face shows substantial consideration passing from United Press to Sentinel, and the trial court erred in holding that the agreement lacked mutuality. *Associated Press v. Emmett,* 45 F.Supp. 907; *Locke v. United States,* 283 F.2d 521; *Powerine Company v. Crown Service Company,* 113 Colo. 450, 158 P.2d 732.

The judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE DAY and MR. JUSTICE McWILLIAMS concur.