566 P.2d 1078 (1977)
CABS, INC., a/k/a Dollar Cab Co., d/b/a Zone Cab Company, Plaintiff-Appellee,
v.
DELIVERY DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL UNION NO. 435, Defendant-Appellant.
No. 76-730.
Colorado Court of Appeals, Div. I.
April 21, 1977.
Rehearing Denied May 12, 1977.
*1079 Madden & Strate, P. C., William J. Madden, Denver, for plaintiff-appellee.
Hornbein, MacDonald & Fattor, Philip Hornbein, Jr., Denver, for defendant-appellant.
COYTE, Judge.
The defendant, Delivery Drivers, Warehousemen and Helpers Local Union No. 435, appeals the district court judgment ordering the Union to proceed to arbitration in a contract dispute and enjoining it from raising specified matters at the arbitration. We affirm the judgment.
In October 1975, the Union entered into a collective bargaining agreement with plaintiff, Cabs, Inc. Contemporaneously with this agreement, the parties also executed an addendum to the contract, which addendum provides in part:
"The contract may be opened only for the purpose of adjustments of all matters pertaining to pay-off concerning meter changes and any adjustments thereof in accordance with the present system."
The addendum further states that, following notice and demand by the Union, negotiations with respect to the adjustments will commence immediately, and if no satisfactory agreement is reached within a specified time, the matter may be submitted to binding arbitration.
In anticipation of a projected increase in the meter rate contingent upon approval by the Public Utilities Commission, negotiations were initiated in February 1976 pursuant to the addendum. The parties eventually reached a stalemate in those negotiations, whereupon the Union attempted to invoke the arbitration provisions in the addendum. Cabs assented to the proposed arbitration; it maintained, however, that the only question subject to arbitration was that of driver "pay-offs," a method of computation by which the operator of a taxicab reimburses the company for the use of the vehicle. Asserting that the addendum additionally contemplated arbitration of the matter of gasoline prices which the drivers were required to pay to the company, the Union declined to arbitrate within the scope delineated by the company.
*1080 Cabs subsequently commenced an action in the district court seeking injunctive relief. The Union counterclaimed under the provision of the Uniform Arbitration Act of 1975, § 13-22-201 et seq., C.R.S.1973 (1976 Cum.Supp.) requesting that the court order the parties to proceed to arbitration of matters in dispute as provided in the addendum.
The trial court concluded that, absent language in the agreement to the contrary, the question of whether an issue was arbitrable was a matter for judicial determination. It further held that by the express terms of the addendum the only arbitrable issue was the distribution of the expected increase in fares following the decision of the Public Utilities Commission. Accordingly, the court issued a preliminary injunction granting Cabs' requested relief. By stipulation of the parties, the trial court thereafter entered its judgment on Cabs' claim for a permanent injunction in accordance with the evidence, findings, and decision resulting from the proceedings held in connection with Cabs' request for a preliminary injunction.

I
The Union designates various assignments of error relative to the single argument that the trial court had no authority to fix the scope of an arbitration arising under the collective bargaining agreement and the addendum. We disagree with the Union's argument.
The Union initially contends that, consistent with the federal doctrine of pre-emption, this litigation is governed by federal law. Inasmuch as the precise question to be resolved here results in no conflict between state law and federal regulation of employment relationships under the National Labor Relations Act, we conclude that the doctrine of pre-emption is inapplicable. See Farmer v. United Brotherhood of Carpenters & Joiners, Local 25, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). Indeed, federal principles are persuasive authority in support of our decision.
The federal rule concerning arbitration under a collective bargaining agreement is that "the arbitration duty is a creature of the collective-bargaining agreement and . . . a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so." Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Consonant with this principle, interpretation of the scope of the parties' agreement to arbitrate devolves in the first instance upon the courts. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Oil, Chemical & Atomic Workers International Union, Local 2-124 v. American Oil Co., 528 F.2d 252 (10th Cir. 1976). While, under federal law, doubts concerning the extent of coverage are to be resolved in favor of arbitration, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), nevertheless, where the contract is not susceptible to a construction mandating arbitration, the parties cannot be compelled to arbitrate. Atkinson v. Sinclair Refining Co., supra.
Similar principles of construction obtain in those jurisdictions which have adopted the Uniform Arbitration Act. Although arbitration is favored as a method of resolving disputes, Wales v. State Farm Mutual Automobile Insurance Co., Colo.App., 559 P.2d 255 (1976), under § 13-22-204(2), C.R.S.1973 (1976 Cum.Supp.) the district court is empowered to stay arbitration proceedings upon a showing that there is no agreement to arbitrate; and where it is apparent from the language of the contract that the issue sought to be arbitrated lies clearly beyond the scope of the arbitration clause, a court cannot order arbitration. See, e. g., Atcas v. Credit Clearing Corp., 292 Minn. 334, 197 N.W.2d 448 (1972); Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc., 21 Md.App. 307, 320 A.2d 558 (1974); see also Pirsig, Some Comments on Arbitration Legislation and the Uniform Act, 10 Vand.L.Rev. 685 (1957). However, where there is a reasonable basis for construing the agreement in support of arbitrability, *1081 the legislative policy underlying the Act requires that the scope of the arbitration be determined by the arbitrator. Layne-Minnesota Co. v. Regents of University of Minnesota, 266 Minn. 284, 123 N.W.2d 371 (1963); and see Brauer, Arbitration in Colorado: The Uniform Arbitration Act of 1975, 5 The Colorado Lawyer 483 (1976).
In this case, the foregoing principles dictate that the Union be precluded from arbitrating the matter of gasoline prices. Evidence adduced at the hearing with respect to the parties' intention in negotiating the addendum and the specific language of the addendum itself demonstrate that the question of gasoline prices was not reasonably contemplated by the parties as a subject of arbitration.
Construing the addendum and the arbitration clause of the collective bargaining agreement as a whole, see Fuller & Co. v. Mountain States Investment Builders, Colo.App., 546 P.2d 977 (1975), we find it evident that the addendum operates as a modification of the bargaining agreement with respect to a particular, and, at the time of its insertion, contingent situation. Arbitration as provided in the addendum is to proceed only following the opening of the initial contract and requisite negotiation. An ensuing arbitration is limited first to adjustments in the "pay-offs" and further limited to only such adjustments as may be necessitated by alterations in the meter charges. Thus, the arbitration contemplated in the addendum is distinct from the grievance procedures described in the agreement and cannot be regarded as a broad arrangement to arbitrate "all matters" which may be disputed by the parties.
Thus, we conclude that the parties' contract cannot be reasonably interpreted to include the arbitration of gasoline prices paid by the drivers. The trial court was therefore correct in its determination of the scope of arbitrable issues.

II
The Union next contends that, if the issue of gasoline prices is not arbitrable, it nevertheless retains a contractual option to decline to arbitrate, and consequently that the trial court erred in ordering it to proceed to arbitration. We perceive no error.
While the addendum does reserve to the Union the unilateral right to initiate the adjustment proceedings, such reservation cannot be relied upon to render the contract a nullity. The addendum recites that the company and the Union had "mutually agreed" to the arrangement, and the obvious purport of this language is that the parties intended the contract to be one supported by mutually binding promises, rather than an unenforceable agreement whereby the Union had reserved to itself "an unlimited right to determine the nature and extent of its performance." United Press International, Inc. v. Sentinel Publishing Co., 166 Colo. 47, 441 P.2d 316 (1968).
Further, the provisions of the Uniform Arbitration Act invoked by the Union in its counterclaim demand that the terms of the arbitration agreement at issue here be fully implemented. Written agreements to submit a controversy to arbitration are deemed valid, enforceable, and irrevocable, "save upon such grounds as exist at law or in equity for the revocation of any contract." Section 13-22-203, C.R.S.1973 (1976 Cum.Supp.). Upon application by a party, the court is required to determine "summarily" whether there exists any agreement to arbitrate; if such agreement does exist, the court "shall order arbitration." Section 13-22-204(1), C.R.S.1973 (1976 Cum.Supp.).
Here, the Union properly initiated the arbitration procedures designated in the addendum. Having determined that a valid agreement to arbitrate did in fact exist, and having established the scope of that arbitration, the trial court was thereafter required by the express language of the Uniform Act, as quoted above, to order the arbitration. See also Wales v. State Farm Mutual Automobile Insurance Co., supra. Accordingly, there is no merit to the Union's assertion that, if "all matters" cannot be arbitrated, there should be no arbitration whatsoever.
The judgment is affirmed.
SMITH and VAN CISE, JJ., concur.